Court No. 25-00212

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| IPG Photonics Corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant.* | Court No. 25-00212 |

## COMPLAINT

Plaintiff, IPG Photonics Corporation ("IPG") by and through its attorneys, alleges and states as follows:

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1.  This action is brought pursuant to 28 U.S.C. § 1581(c). Plaintiff contests the final scope ruling issued by the U.S. Department of Commerce ("Commerce") concerning the antidumping duty order on aluminum extrusions from China. *See* Memorandum from John C. Kalitka, Senior International Policy Analyst, Office of Antidumping Policy and Negotiations, through Maureen Shaheen, Acting Director, Office of Antidumping Policy and Negotiations, to Scot Fullerton, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *RE: Aluminum Extrusions from the People's Republic of China: Final Scope Ruling on IPG Photonics Corporation's Heat Sinks* (August 27, 2025) ("Final Scope Ruling").

1

## JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Section 516A(a)(2)(A)(ii) and (B)(vi) of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1516a(a)(2)(A)(ii) and (B)(vi).

## STANDING

3. Plaintiff is a U.S. importer of subject merchandise, and therefore, is an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A) and 28 U.S.C. § 2631(k)(1).

4. Plaintiff participated in the administrative proceeding that is the subject of this challenge, and accordingly, has standing to commence this action pursuant to 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

5. Plaintiff commenced this action by filing a Summons on September 26, 2025, within 30 days after Commerce mailed its Final Scope Ruling. *See* Memorandum from Samantha Fino, International Trade Specialist, Office of Policy, Enforcement and Compliance, to The File, *SUBJECT: Certified Mail Documentation for Transmitting Final Scope Ruling* (September 4, 2025). Plaintiff files this Complaint within 30 days of filing the Summons. The Summons and Complaint are, therefore, timely filed pursuant to 19 U.S.C.§ 1516a(a)(2)(A)(ii) and Rules 3(a)(2) and 6(a) of this Court.

6. Because Plaintiff's Complaint is being filed within the statutorily prescribed period, this action is timely.

Court No. 25-00212

# HISTORY OF THE ADMINISTRATIVE PROCEEDING

7. On May 26, 2011, Commerce published the antidumping order and countervailing duty order on imports of aluminum extrusions from China. *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 Fed. Reg. 30,650 (May 26, 2011); Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 Fed. Reg. 30,653 (May 26, 2011)* (the "Orders"). The scope of the Orders is as follows:

> The merchandise covered by the *Orders* is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents). Specifically, the subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 1 contains not less than 99 percent aluminum by weight. The subject merchandise made from aluminum alloy with an Aluminum Association series designation commencing with the number 3 contains manganese as the major alloying element, with manganese accounting for not more than 3.0 percent of total materials by weight. The subject merchandise is made from an aluminum alloy with an Aluminum Association series designation commencing with the number 6 contains magnesium and silicon as the major alloying elements, with magnesium accounting for at least 0.1 percent but not more than 2.0 percent of total materials by weight, and silicon accounting for at least 0.1 percent but not more than 3.0 percent of total materials by weight. The subject aluminum extrusions are properly identified by a four-digit alloy series without either a decimal point or leading letter. Illustrative examples from among the approximately 160 registered alloys that may characterize the subject merchandise are as follows: 1350, 3003, and 6060. Aluminum extrusions are produced and imported in a wide variety of shapes and forms, including, but not limited to, hollow profiles, other solid profiles, pipes, tubes, bars, and rods.

> Aluminum extrusions that are drawn subsequent to extrusion (drawn aluminum) are also included in the scope.

> Aluminum extrusions are produced and imported with a variety of finishes (both coatings and surface treatments), and types of fabrication. The types of coatings and treatments applied to subject aluminum extrusions include, but are not limited to, extrusions that are mill finished (*i.e.*, without any coating or further finishing), brushed, buffed, polished, anodized (including brightdip anodized), liquid painted, or powder coated. Aluminum extrusions may also be fabricated, *i.e.*, prepared for assembly. Such operations would include, but are not limited to, extrusions that are cut-to-length, machined, drilled, punched, notched, bent, stretched, knurled, swedged, mitered, chamfered, threaded, and spun. The subject merchandise includes aluminum extrusions that are finished (coated, painted, *etc.*), fabricated, or any combination thereof. Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are

assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached *(e.g.*, by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below). Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation. The following aluminum extrusion products are excluded: aluminum extrusions made from aluminum alloy with an Aluminum Association series designations commencing with the number 2 and containing in excess of 1.5 percent copper by weight; aluminum extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 5 and containing in excess of 1.0 percent magnesium by weight; and aluminum extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 7 and containing in excess of 2.0 percent zinc by weight.

The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished goods kit." A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the *Orders* merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product.

The scope also excludes aluminum alloy sheet or plates produced by other than the extrusion process, such as aluminum products produced by a method of casting. Cast aluminum products are properly identified by four digits with a decimal point between the third and fourth digit. A letter may also precede the four digits. The following Aluminum Association designations are representative of aluminum alloys for casting: 208.0, 295.0, 308.0, 355.0, C355.0, 356.0, A356.0, A357.0, 360.0, 366.0, 380.0, A380.0, 413.0, 443.0, 514.0, 518.1, and 712.0. The scope also excludes pure, unwrought aluminum in any form.

The scope also excludes collapsible tubular containers composed of metallic elements corresponding to alloy code 1080A as designated by the Aluminum Association where the tubular container (excluding the nozzle) meets each of the following dimensional characteristics: (1) length of 37 millimeters (mm) or 62 mm, (2) outer diameter of 11.0 mm or 12.7 mm, and (3) wall thickness not exceeding 0.13 mm.

Also excluded from the scope of these *Orders* are finished heat sinks. Finished heat sinks are fabricated heat sinks made from aluminum extrusions the design and production of which are organized around meeting certain specified thermal performance requirements and which have been fully, albeit not necessarily individually, tested to comply with such requirements. Also excluded from the scope of the *Orders* is certain rectangular wire produced from continuously cast rolled aluminum wire rod, which is subsequently extruded to dimension to form rectangular wire. The product is made from aluminum alloy grade 1070 or 1370, with no recycled metal content allowed. The dimensions of the wire are 5 mm (+/- 0.05 mm) in width and 1.0 mm (+/- 0.02 mm) in thickness. Imports of rectangular wire are provided for under HTSUS category 7605.19.000.

Imports of the subject merchandise are provided for under the following categories of the Harmonized Tariff Schedule of the United States (HTSUS): 6603.90.81.00, 7604.21.00.00, 7604.21.00.10, 7604.21.00.90, 7604.29.10.00, 7604.29.10.10, 7604.29.10.90, 7604.29.30.10, 7604.29.30.50, 7604.29.30.60, 7604.29.30.90, 7604.29.50.30, 7604.29.50.60, 7604.29.50.50, 7604.29.50.90, 7606.12.30.91, 7606.12.30.96, 7608.20.00.30, 7608.20.00.90, 7609.00.00, 7610.10.00, 7610.90.00, 7615.10.20.15, 7615.10.20.25, 7615.10.30, 7615.10.30.15, 7615.10.30.25, 7615.10.50.20, 7615.10.50.40, 7615.10.71, 7615.10.71.25, 7615.10.71.30, 7615.10.71.55, 7615.10.71.80, 7615.10.91, 7615.10.91.00, 7615.19.10, 7615.19.30, 7615.19.50, 7615.19.70, 7615.19.90, 7615.20.00, 7615.20.00.00, 7616.10.90.90, 7616.99.10, 7616.99.50, 7616.99.51, 8302.10.30.00, 8302.10.60.30, 8302.10.60.60, 8302.10.60.90, 8302.20.00.00, 8302.30.30.10, 8302.30.30.60, 8302.41.30.00, 8302.41.60.15, 8302.41.60.45, 8302.41.60.50, 8302.41.60.80, 8302.42.30.10, 8302.42.30.15, 8302.42.30.65, 8302.49.60.35, 8302.49.60.45, 8302.49.60.55, 8302.49.60.85, 8302.50.00.00, 8302.60.90.00, 8305.10.00.50, 8306.30.00.00, 8414.59.60.90, 8415.90.80.45, 8418.99.80.05, 8418.99.80.50, 8418.99.80.60, 8419.90.10.00, 8422.90.06.40, 8424.90.90.80, 8473.30.20.00, 8473.30.51.00, 8479.89.94, 8479.89.98, 8479.90.85.00, 8479.90.94, 8481.90.90.60, 8481.90.90.85, 8486.90.00.00, 8487.90.00.80, 8503.00.95.20, 8508.70.00.00, 8513.90.20, 8515.90.20.00, 8516.90.50.00, 8516.90.80.50, 8517.70.00.00, 8529.90.73.00, 8529.90.97.60, 8536.90.80.85, 8538.10.00.00, 8541.90.00.00, 8543.90.88.80, 8543.90.88.85, 8708.10.30.50, 8708.29.50.60, 8708.29.51.60, 8708.80.65.90, 8708.99.68.90, 8803.30.00.60, 9013.90.50.00, 9013.90.90.00, 9031.90.90.95, 9031.90.91.95, 9401.90.50.81, 9401.99.90.81, 9403.10.00, 9403.20.00, 9403.90.10.40, 9403.90.10.50, 9403.90.10.85, 9403.90.25.40, 9403.90.25.80, 9403.90.40.05, 9403.90.40.10, 9403.90.40.60, 9403.90.50.05, 9403.90.50.10, 9403.90.50.80, 9403.90.60.05, 9403.90.60.10, 9403.90.60.80, 9403.90.70.05, 9403.90.70.10, 9403.90.70.80, 9403.90.80.10, 9403.90.80.15, 9403.90.80.20, 9403.90.80.41, 9403.90.80.51, 9403.90.80.61, 9403.99.10.40, 9403.99.90.10, 9403.99.90.15, 9403.99.90.20, 9403.99.90.41, 9405.99.40.20, 9506.11.40.80, 9506.51.40.00, 9506.51.60.00, 9506.59.40.40, 9506.70.20.90, 9506.91.00.10, 9506.91.00.20, 9506.91.00.30, 9506.99.05.10, 9506.99.05.20, 9506.99.05.30, 9506.99.15.00, 9506.99.20.00, 9506.99.25.80, 9506.99.28.00, 9506.99.55.00, 9506.99.60.80, 9507.30.20.00, 9507.30.40.00, 9507.30.60.00, 9507.30.80.00, 9507.90.60.00, and 9603.90.80.50.

The subject merchandise entered as parts of other aluminum products may be classifiable under the following additional Chapter 76 subheadings: 7610.10, 7610.90, 7615.19, 7615.20, and 7616.99, as well as under other HTSUS chapters. In addition, fin evaporator coils may be classifiable under HTSUS numbers: 8418.99.80.50 and 8418.99.80.60. While HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of the *Orders* is dispositive.[1]

---

[1] *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 FR 30650 (May 26, 2011) (*AD Order*); and *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 FR 30653 (May 26, 2011) (*CVD Order*) (collectively, the *Orders*).

8. On October 4, 2024, IPG filed a scope ruling application under 19 C.F.R. § 351.225, requesting a determination that IPG's heat sinks models CM513100000100ZG, CMUS0009602XXXXU, CMUS0014756XXXXU, and CMUS0015888XXXXU (collectively, the "IPG Products") are outside the scope of the Orders.  *See* Letter from Sandler, Travis & Rosenberg, P.A. to Commerce, *Re: Aluminum Extrusions from the People's Republic of China: Scope Ruling Application for IPG Photonics Corporation* (Oct. 4, 2024) ("Scope Request").

9. In its scope ruling application, IPG provided substantial evidence that the IPG Products covered by its Scope Request are not covered by the scope of the Orders. Specifically, IPG explained that the IPG Products, created through an aluminum extrusion process, are designed, manufactured, and tested to ensure they meet certain thermal performance requirements necessary for specific IPG lasers, into which they are incorporated in the United States.  The custom-made heat sinks are produced in and exported from China directly to IPG and are not sold to any customers, save for as part of the lasers they comprise. IPG provided substantial evidence that the IPG Products are not within the scope of the Orders because they fall within the express exclusion for "finished heat sinks."  Specifically, IPG Photonics' finished heat sinks meet the following exclusion language:

> Also excluded from the scope of these Orders are finished heat sinks. Finished heat sinks are fabricated heat sinks made from aluminum extrusions the design and production of which are organized around meeting certain specified thermal performance requirements and which have been fully, albeit not necessarily individually, tested to comply with such requirements.

*See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order,* 76 Fed. Reg. 30,650 (May 26, 2011); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (May 26, 2011) (collectively, the "*Orders*").

10. On October 31, 2024, IPG's Scope Request was deemed accepted, and the scope inquiry was deemed initiated.  *See* 19 C.F.R. § 351.225(d)(1)(iii); *see also* Memorandum from John C. Kalitka, Senior Antidumping Policy Analyst Enforcement &

6

Compliance, Policy & Negotiations, through Norbert Gannon, Director Antidumping Policy, to The File, *SUBJECT: Aluminum Extrusions from the People's Republic of China: Initiation of Scope Inquiries on IPG Photonics Heat Sinks* (Oct. 31, 2024).

11. On December 9, 2024, the Aluminum Extrusions Fair Trade Committee ("Petitioner") submitted comments and factual information to rebut, clarify, or correct IPG's Scope Request. *See* Letter from Wiley to Commerce, *Re: Aluminum Extrusions from the People's Republic of China: Comments on IPG Photonics' Scope Ruling Request* (Dec. 9, 2024). In its comments, Petitioner argued that the IPG Products do not meet the express exclusion for "finished heat sinks" and, as such, are covered by the scope of the Orders.

12. On January 6, 2025, IPG responded to the Petitioner's comments. *See* Letter from Sandler, Travis & Rosenberg, P.A. to Commerce, *Re: IPG Photonics Rebuttal Comments: IPG Photonics Heat Sinks, Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China, A-570-967/C-570-968* (Jan. 6, 2025). IPG explained that it provided ample evidence of that specific thermal requirements existed before and after the development of the imported heat sinks, IPG Photonics itself designed the form and contact point locations of the heat sinks it incorporated into its lasers, and every laser produced by IPG Photonics is tested for power output stability and laser module temperature stability, among other facts attesting that IPG Photonics' heat sinks are finished heat sinks, specifically designed and tested to perform in specific IPG Photonics laser modules and therefore within the definition of finished heat sinks that are excluded from the scope of the Orders.

13. On August 7, 2025, Commerce issued its final scope ruling, determining that the IPG Products do not meet the criteria for "finished heat sinks" and are therefore covered by the scope of the antidumping duty (AD) and countervailing duty (CVD) orders on

aluminum extrusions from the People's Republic of China (China). *See* Final Scope Ruling.

## STATEMENT OF THE CLAIMS

14. In the following respects, and for the other reasons demonstrated on the record of the administrative proceeding, Commerce's Final Scope Ruling is unsupported by substantial evidence and otherwise not in accordance with law.

### Count I

15. The allegations of paragraphs 1 through 14 are restated and incorporated herein by reference.

16. Commerce's determination that the IPG Products do not meet the "finished heat sink" exclusion and are therefore covered by the scope of the Orders is not based upon substantial evidence or otherwise in accordance with law.

### Count II

17. The allegations of paragraphs 1 through 16 are restated and incorporated herein by reference.

18. Commerce's conclusion based on its analysis conducted pursuant to 19 C.F.R. § 351.225(k)(1) that the IPG Products are covered by the scope of the Orders is unsupported by substantial evidence or otherwise not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, IPG Photonics Corporation, requests that this Court:

(1) Enter judgement in favor of IPG Photonics Corporation;

(2) Hold that Commerce's Final Scope Ruling challenged in this complaint is not supported by substantial evidence, and otherwise not in accordance with law;

(3) Remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision; and

Court No. 25-00212

(4) Grant such other and further relief as this Court may deem just and appropriate.

                                    Respectfully Submitted,

                                    William Marshall
                                    Sarah Sprinkle
                                    Christopher Yankson
                                    Gregory Toth
                                    **SANDLER TRAVIS & ROSENBERG, P.A.**
                                    1300 Pennsylvania Avenue, N.W.
                                    Suite 400
                                    Washington, D.C. 20004
                                    Tel: (202) 730-4969

                                    *Attorneys for IPG Photonics Corporation*

Dated: October 24, 2025

Court No. 25-00212

## CERTIFICATE OF SERVICE

*IPG Photonics Corporation v.*
*United States*
Court No. 25-00212

As counsel for Plaintiff, IPG Photonics Corporation, I certify that copies of the Complaint were served on the following parties, via CERTIFIED MAIL or REGISTERED MAIL, RETURN RECEIPT REQUESTED on October 24, 2025.

| **Upon the United States** | **Upon the U.S. Department of Commerce** |
|---|---|
| Attorney-in-Charge<br>International Trade<br>Field Office<br>Commercial Litigation<br>Branch U.S. Department<br>of Justice Room 34626<br>Federal Plaza<br>New York, New York<br>10278 | General Counsel<br>U.S. Department of Commerce<br>14th Street & Constitution Avenue, NW<br>Washington, DC 20230 |
| Director, Civil Division<br>Commercial Litigation<br>Branch U.S. Department<br>of Justice<br>1100 L Street, NW<br>Washington, DC 20530 | Evangeline Keenan<br>Director, APO/Dockets Unit<br>U.S. Department of Commerce<br>14th Street & Constitution Avenue, NW<br>Room 18022<br>Washington, DC 20230 |

**Upon Petitioner**
Alan H Price, Esq.
Representative of Aluminum Extrusions Fair Trade Committee
Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036
Phone: 202-719-7000
Email: aprice@wiley.law

Respectfully submitted,

William Marshall
Sarah Sprinkle
Christopher Yankson
Gregory Toth
**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W. Suite 400
Washington, D.C. 20004
Tel: (202) 730-4969

Dated: October 24, 2025